UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BERTHA GARZA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. M-09-133 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| | § | |
| Defendant. | § | |

## <u>**MEMORANDUM OPINION**</u>

Plaintiff Bertha Garza filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security Administration's denial of Plaintiff's application for disability benefits.[1] Plaintiff's application alleged that she became disabled at age 38 due mainly to lower back pain. The Commissioner's denial of her disability claim was based on a decision by an Administrative Law Judge (ALJ), who found that, while Plaintiff's back problems prevented her from doing her past work, she retained the capacity to perform certain types of sedentary work. Plaintiff claims in this action that the ALJ's residual functional capacity determination is not supported by substantial evidence; specifically, she argues that there is no medical opinion evidence that supports the ALJ's finding since she "rejected" the opinions of both Plaintiff's treating doctor and a state agency medical consultant. (Docket No. 7, at 1.) Pending before the Court are the parties' cross-motions for summary judgment. (Docket Nos. 7, 11.)

A federal court may review the Commissioner's denial of benefits only to determine whether it is supported by substantial evidence and whether the proper legal standards were

---

[1] With the consent of the parties, the District Court referred this case to the undersigned for plenary handling pursuant to 28 U.S.C. § 636(c)(1). (Docket Nos. 8-10.)

applied; a court may not re-weigh the evidence or substitute its judgment for the Commissioner's. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).    After carefully considering the record in light of the deferential standard of review that applies, the Court finds that Plaintiff's appeal lacks merit.   Although the ALJ did not properly address the medical opinion evidence in her decision, the error was harmless because the ALJ's residual functional capacity finding is supported by substantial evidence in the record, including medical records, the ALJ's assessment of Plaintiff's subjective symptoms, and the opinion of the state agency doctor.   Accordingly, for the reasons explained further below, the Court will grant the Commissioner's motion for summary judgment.

## I.  BACKGROUND[2]

On October 11, 2005, Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under sections 216(i) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and section 1614(a)(3)(A) of Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, respectively.[3]  (*See* Tr. 18, 40-41.)  In both applications, Plaintiff alleged that she became disabled on August 26, 2005, and she identified two conditions that prevented her from working: 1) lower back pain; and 2) right leg numbness.  (Tr. 18, 40-41, 105-07, 134-35.)

Plaintiff's applications were denied initially and on reconsideration.   (Tr. 38-41.) Plaintiff then requested a hearing before an ALJ, which was held on April 24, 2008, in Harlingen, Texas.  (Tr. 251-71.)  After the hearing, the ALJ issued a written decision finding that Plaintiff was not disabled because she retained the residual functional capacity to perform a

---

[2] The Commissioner has filed a transcript of the record of the administrative proceedings, which will be cited as "Tr."

[3] Plaintiff's applications are not included in the record.

limited range of sedentary work, and there are significant numbers of jobs in the national economy that Plaintiff could perform.  (Tr. 18–24.)

In considering Plaintiff's challenge to the ALJ's decision, the evidence in the record will be summarized.[4]

## A.      Education and Work Experience

At the evidentiary hearing, Plaintiff testified that she has a ninth grade education in the United States; she has a limited ability to read and write English.  (Tr. 257.)  Plaintiff was 38 years old on the date that she alleges she became disabled, August 26, 2005.  (Tr. 18, 40-41, 81.)  In the fifteen years prior to filing her disability applications, Plaintiff held numerous jobs, including home health provider, field worker, food packer, and janitor.  (Tr. 116.)  Most recently, Plaintiff worked as a home health provider from 2002 to 2004.  (Tr. 116.)  She worked between four to six hours daily, helping clients with cooking, cleaning, and personal grooming.  (Tr. 117, 120, 122.)  Plaintiff frequently lifted more than 50 pounds and sometimes over 100 pounds.  (*Id.*)

In addition, Plaintiff worked as a field worker in 2004, and from 1982 to 1996.  (Tr. 116.)  Her duties included picking vegetables, and she regularly carried vegetable containers weighing in excess of 50 pounds.  (Tr. 118.)  In 1999, Plaintiff also worked packing frozen meats.  (Tr. 116, 121.)  In this work, Plaintiff frequently lifted over 50 pounds as well.  Plaintiff has not worked since August 2005, when she claims that her back pain became too severe.  (Tr. 257-59.)

## B.      The Medical Evidence

Plaintiff asserts that lower back pain is the primary condition that prevents her from working.  The medical evidence in the record principally addresses her back problems.

---

[4]  The Court must "scrutinize" the record to determine whether the ALJ's decision is supported by substantial evidence.  *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).

On August 26, 2005, Plaintiff went to Knapp Medical Center, complaining of "chronic lower back pain that has been getting worse" for the last three months and "right leg numbness that worsens on ambulation." (Tr. 183.) Plaintiff was able to move all of her extremities, but had a "right lower extremity limp secondary to pain." (Tr. 184.) She was admitted to the medical floor and referred for a neurological and orthopedic consultation; X-rays and MRIs were taken of her lumbar spine and brain. (*Id.*)

The MRI of her brain and X-ray of her chest were unremarkable. (Tr. 195, 197.) Dr. Dario Narro performed a neurological consultation and noted the following: no motor movement tremors, symmetrical grip strength, a decreased sensory pinprick in the right L5-S1, and decreased right ankle jerk in her deep tendon reflexes. (Tr. 185.) Dr. Narro found "no clinical evidence to suggest multiple sclerosis," but noted "concern of lumbar radiculopathy."[5] (Tr. 186.)

The MRI of her lumbar spine showed: "anterolisthesis, degenerative disk changes, endplate changes and moderate to severe bilateral neural foraminal narrowing" at the L5-S1 levels; and "mild diffuse disk bulging" at the L1-L2 levels. (Tr. 196.) Dr. S. Gopal Krishnan performed an orthopedic examination and made the following findings:

> On examination, she is moderately obese. She weighs over 230 pounds. She is 5'2" tall. She is able to sit up comfortably. Straight leg raising is positive on the right at 75 degrees with hamstring tightness and subjective pain. Muscle strength is good to excellent. Reflexes are equally vocal. Sensation is well preserved. She was able to spontaneously sit up and has been to the bathroom and showered on her own, which indicates an ability to do a heel and toe rise.

(Tr. 187.) Dr. Krishnan's ultimate impression was that Plaintiff has "[l]umbalgia with right lower extremity radiculopathy"; because she did not want any invasive surgical procedures, he "strongly" suggested epidural steroid injections. (Tr. 187-88.)

---

[5] Radiculopathy is a "[d]isorder of the spinal nerve roots." STEDMAN'S MEDICAL DICTIONARY 1503 (27th ed. 2000).

On August 29, 2005, three days after being admitted to the hospital, Plaintiff underwent the epidural steroid injection procedure.  (Tr. 199-200.)  During the procedure, Plaintiff received a "[c]audal epidural steroid injection," a "[b]ilateral trans-foraminal epidural steroid injection at the L5-S1 level," and a right side "[s]acroiliac ligament and intra-articular injection."  (*Id.*)  Plaintiff tolerated the procedure well, there were no complications, and afterwards she did not complain of any pain.  (*Id.*)

Dr. Luis E. Mejia discharged Plaintiff later that day.  (Tr. 189-90.)  Upon discharge, she was alert and oriented, and she "denied back pain or headache."  (Tr. 189.)  Plaintiff was also "moving her legs and feet without any difficulty."  (*Id.*)  Plaintiff was sent home with pain medication to be taken as needed and instructed to follow-up with Drs. Mejia and Robles.  (Tr. 190.)  In addition, Plaintiff was told to call a doctor or to go to the emergency room if she experienced any pain that was not relieved by Tylenol or Motrin.  (*Id.*)

There is no evidence in the record that Plaintiff sought any other medical treatment until three months later, on November 30, 2005, when she returned to Knapp Medical Center, complaining of "persistent low back pain to where she is in bed the majority of the day."  (Tr. 149.)  Plaintiff was "hunched over while sitting down," "crying secondary to the pain," but she could "move[ ] all extremities."  (Tr. 149-50.)  She was diagnosed with "[l]umbalgia with right lower extremity radiculopathy" and prescribed morphine and Lortab as needed for pain.  (Tr. 150.)  Plaintiff was admitted for pain management and a surgical consultation.  (Tr. 149.)

The same day, Dr. Krishnan performed a surgical consultation.  (Tr. 151.)  Dr. Krishnan noted that since her previous visit, Plaintiff had been non-compliant with her medical care.  (*Id.*)  Plaintiff "appear[ed] comfortable," but complained of "pain on the right lower extremity."  (*Id.*)  Her reflexes were "active," and her sensation strength was "well maintained."  (*Id.*)  Dr.

Krishnan reviewed the previous MRI, and noted that "[s]he does not have any disc herniations," but has "anterolisthesis and foraminal stenosis at L5-S1." (*Id.*)  Dr. Krishnan recommended that Plaintiff repeat an epidural steroid injection and consult with Dr. Dones-Vasquez, a neurosurgeon. (*Id.*)

On November 21, 2005, a state agency physician, Dr. Jimmy Breazeale, reviewed Plaintiff's medical records and performed a residual functional capacity (RFC) assessment. (Tr. 156-63.)  Dr. Breazeale determined that Plaintiff had the ability to do the following: lift and/or carry 25 pounds frequently and 50 pounds occasionally; sit for 6 hours out of an 8-hour workday; stand or walk for 6 hours out of an 8-hour workday; and able push or pull without limitation. (Tr. 157.)  In addition, Dr. Breazeale determined that Plaintiff could only occasionally stoop, crouch and climb ladders, but could frequently balance, kneel, crawl, and climb stairs. (Tr. 158.)  He found no other limitations. (Tr. 159-60.)  Dr. Breazeale concluded that Plaintiff's alleged subjective limitations were not supported by objective medical evidence. (Tr. 161.)

A week after her visit to Knapp Medical Center, Plaintiff returned to Dr. Mejia, complaining of lower back pain with pain radiating to her lower extremities. (Tr. 206.)  Plaintiff stated that the epidural injections were not helping. (*Id.*)  Dr. Mejia referred Plaintiff to Dr. Eric G. Six for a consultation. (Tr. 224.)  On December 9, 2005, Dr. Six reviewed Plaintiff's previous MRI scan and noted "severe degenerative disc disease at L5-S1 associated with an almost Grade II spondylolisthesis."[6] (*Id.*)  He recommended a "decompression and fusion" surgery. (*Id.*)  Dr. Six stated that Plaintiff was "quite disabled" and "[g]iven the amount of pathology she has, she is

---

[6] Spondylolisthesis refers to the "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum." STEDMAN'S MEDICAL DICTIONARY 1678 (27th ed. 2000).

certainly disabled at this time and will probably qualify for [Social Security] assistance." (*Id.*) Dr. Six did not indicate whether he personally examined Plaintiff.

Plaintiff did not have surgery at that time.  About eight months later, on July 27, 2006, Plaintiff went to RGV Adult & Geriatric Medicine Specialists, complaining of lower back pain that "sometimes" caused difficulty walking.  (Tr. 205.)  Plaintiff noted that surgery had been recommended but that she was having "financial problems."   (*Id.*)   Plaintiff's next sought medical treatment about eight months later, on March 6, 2007, when she returned to RGV Adult & Geriatric Medicine Specialists complaining of "extreme waist pain." (Tr. 204.)  Her treatment plan included instructions to take Motrin.  (*Id.*)

About nine months later, on December 13, 2007, Plaintiff returned to Knapp Medical Center.  Dr. Jose G. Dones-Vasquez ordered an X-ray and MRI of her lumbar spine.  (Tr. 212-13.)   The X-ray showed the "vertebral bodies are normal in height," "grade I to II spondylolisthesis at L5-S1," disk space narrowing at the lumbosacral junction, possible sclerosis, and an alignment that remained unchanged "with flexion and extension."  (Tr. 212.)  The MRI revealed "mild diffuse disk bulging" at the lumbosacral junction, "[s]pondylolysis[7] with grade 1-2 spondylolisthesis at L5-S1," and "moderately narrowed" neural foramen at L5-S1.  (Tr. 213.)

The next month, on January 16, 2008, Dr. Dones-Vasquez performed surgery on Plaintiff at Valley Baptist Medical Center.  (Tr. 215-16.)  The surgical procedures focused on the L5-S1 sections and included a bilateral lumbar laminectomy, bilateral foraminotomies, diskectomy on the right side, placement of pedicle screws with fluoroscopy, posterolateral fusion, and an epidural block.  (Tr. 215.)  Plaintiff tolerated the procedure well.  (Tr. 216.)

---

[7] Spondylolysis refers to the "[d]egeneration or deficient development of a portion of the vertebra." STEDMAN'S MEDICAL DICTIONARY 1678 (27th ed. 2000).

The next day, Plaintiff was able to sit with "no acute distress," was able to ambulate, and had no complaints.  (Tr. 217.)  Plaintiff could move all of her extremities; notably, she was "moving the right lower extremity better than before."  (*Id.*)  Plaintiff was discharged and given a follow-up appointment for two weeks, as well as a prescription for Darvocet, to be taken as needed.  (*Id.*)  There are no records of any follow-up visits or further treatment.

At some point, Dr. Dones-Vasquez completed a "Lumbar Spine Questionnaire."[8]  (Tr. 226-30.)  Plaintiff stated that her pain was constant and aggravated by walking.  (Tr. 226.)  She showed positive objective signs in a straight leg raising test (at 45 degrees for her right leg), along with a muscle spasm and reflex changes.  (*Id.*)  Negative findings included a normal gait, no sensory loss, lack of tenderness or swelling, and no muscle atrophy or weakness.  (*Id.*)  Dr. Dones-Vasquez determined that Plaintiff had the ability to do the following: lift and/or carry less than 10 pounds frequently and 20 pounds occasionally; sit for less than 2 hours out of an 8-hour workday; and stand or walk for 2 hours out of an 8-hour workday.  (Tr. 228-29.)  He also found that Plaintiff needed to walk for 5 minutes every 15 minutes and that she would need to take unscheduled breaks during the day.  (Tr. 228.)

Notwithstanding these findings, Dr. Dones-Vasquez found that Plaintiff could sit "*continuously*" for 2 hours and 20 minutes, stand "*continuously*" for 1 hour and 10 minutes, and walk for 5 blocks "without rest"; in addition, he stated that she did not need a cane or other assistive device to ambulate.  (Tr. 227, 229 (emphasis in original).)  Dr. Dones-Vasquez further

---

[8] There is some uncertainty on when Dr. Dones-Vasquez completed this assessment. Plaintiff claims that Dr. Dones-Vasquez completed this form on April 22, 2008, which was two days before the evidentiary hearing held by the ALJ.  (Tr. 262.)  The ALJ identified April 22, 2007, as the date that the form was completed.  (Tr. 22.)  This discrepancy, which does not appear to have been material to the ALJ's decision, is discussed further *infra* at n.15.

noted that Plaintiff was not limited in her ability to repetitively reach, handle, or finger objects. (Tr. 229.)

## C.    The Evidentiary Hearing

An evidentiary hearing was held on April 24, 2008, in Harlingen, Texas.  (Tr. 251-71.) Two witnesses testified: Plaintiff, represented by an attorney, and Richard Miller, a vocational expert.  (Tr. 251.)

Plaintiff testified that she last worked as a home provider in August 2005, but she had to stop because she "couldn't move" due to pain in her "back and lower hip."  (Tr. 257-58.)  As a home provider, Plaintiff helped clients with cleaning, bathing, and administering medications. (Tr. 258.)  Plaintiff also had previous employment as a maid, field worker, and food packer.  (Tr. 259.)  Plaintiff was unsure how she injured herself, but she had previously been "able to work with pain."  (*Id.*)

As to her back problems, Plaintiff stated that when she went to Knapp Medical Center in August of 2005, she was unable to proceed with the recommended surgery at that time because she "didn't have any choice."[9]  (Tr. 260-61.)  Plaintiff received some steroid injections in her back, but they only provided minimal relief.  (*Id.*)  Two and a half years later, in January 2008, Plaintiff went through with the recommended surgery.  (Tr. 261.)  Plaintiff delayed the surgery because she did not have insurance.  (*Id.*)

---

[9]  Plaintiff may have been somewhat confused about the chronology.  Her attorney asked her about what Dr. Six recommended in connection with her August 2005 hospitalization.  (Tr. 260.)  However, Dr. Six's involvement was several months later in December 2005.  (Tr. 224.) Dr. Krishnan recommended surgery in August 2005, but Plaintiff "refused at that time."  (Tr. 149.)  Dr. Krishnan's report dated August 28, 2005, states that Plaintiff did "not want any invasive surgical procedures."  (Tr. 188.)  When Plaintiff returned to the hospital on November 30, 2005, she stated that she was "now ready for surgery" due to severe pain.  (Tr. 149, 151.) Although she was willing to have surgery as of December 2005, she was unable to have it done due to lack of insurance.  (Tr. 261.)

Prior to the surgery, Plaintiff stated that she "couldn't do practically anything" and was "mostly lying in bed." (*Id.*)  After surgery, which helped "[a] little bit," Plaintiff's pain in her right leg decreased; the pain is still present on a daily basis "[a] little bit only." (Tr. 262.)  On April 22, 2008, two days prior to the hearing, Plaintiff returned to her surgeon, Dr. Dones-Vasquez. (*Id.*)  Plaintiff stated that Dr. Dones-Vasquez told her that she "could not bend or twist from side-to-side, [and] not to lift heavy objects." (Tr. 263.)  The doctor also advised that he would not be referring her to a pain specialist. (*Id.*)

Plaintiff described her physical limitations resulting from her back problems.  Plaintiff stated that she can stand up for only 10 minutes due to pain in her back, and if she stands longer, she will also experience cramps in her right leg. (*Id.*)  Plaintiff is able to walk with a cane for 10 to 15 minutes, but without a cane, she must "hold on to something." (Tr. 263-64.)  She stated she is able to sit for 10 to 15 minutes, and she claimed that she could not lift a gallon of milk. (Tr. 264.)  Plaintiff also stated that during the day, she has to lie down four or five times, up to one hour each time. (*Id.*)  Plaintiff experiences difficulty sleeping, although she is not taking any medication to help her sleep. (*Id.*)

Plaintiff is taking hydrocodone for pain, which makes her "forget a lot of things." (Tr. 264-65.)  When she takes her pain medication, the "pain subsides somewhat." (Tr. 265.)  Plaintiff stated that her daughter cooks for her and helps her with her personal needs. (*Id.*)  For exercise, Plaintiff walks inside her home for 10 to 15 minutes, three or four times daily. (Tr. 265-66.)

The vocational expert (VE), Mr. Miller, stated that Plaintiff's past work as a home health provider was classified by the Department of Labor as "medium, semi-skilled, at a level of

three."  (Tr. 267.)  Her past work as a farm worker, packer, and janitor were classified as "medium, unskilled, at a level of two."  (*Id.*)

The VE then responded to a hypothetical question posed by the ALJ.  (Tr. 268.)  The ALJ asked him to assume that Plaintiff "possesses the strength to perform a wide range of sedentary work," but also requires a "sit/stand option on a 30-minute interval," and could only occasionally stoop, kneel, and crouch.  (*Id.*)  The ALJ explained that the sit/stand option meant that Plaintiff "would sit for a half-hour or so, stand up and move around at the workstation and sit back down."  (*Id.*)  Mr. Miller stated that with those limitations, Plaintiff could not perform any of her past work.  (*Id.*)  However, there would be work available in the "unskilled, sedentary nature." (*Id.*)  He described the following positions as examples of jobs he believed Plaintiff was capable of performing:

1) Production Worker - representing approximately 160,000 in the national economy and 8,000 in Texas;

2) Table Worker - representing approximately 39,000 in the national economy and 2,200 in Texas; and

3) Machine Operator - representing approximately 21,000 in the national economy and 1,100 in Texas.  (*Id.*)

The ALJ then asked the VE to assume the same vocational factors, but with additional limitations consistent with Dr. Dones-Vasquez's lumbar spine questionnaire.  (*Id.*)  Mr. Miller stated that with those limitations, there would be no work available to Plaintiff "on a competitive basis."  (Tr. 269.)

Counsel for Plaintiff cross-examined the VE regarding the ALJ's hypotheticals.  (*Id.*) Counsel asked the VE if an individual could sustain work with the restrictions listed in Dr. Dones-Vasquez's questionnaire in addition to only being able to sit less than two hours and stand/walk about two hours.  (*Id.*)  Mr. Miller again confirmed that she could not work on a

11

competitive basis with those limitations. (*Id.*) In addition, counsel asked if an individual would be able to sustain work if they were to miss work more than twice a month due to their conditions. (*Id.*) Mr. Miller responded that "[i]t would become problematic and sustaining competitive employment would be difficult." (Tr. 269-70.)

At the end of the hearing, Plaintiff's counsel stated that additional medical records from Dr. Dones-Vasquez would be submitted as soon as possible. (Tr. 270.) The ALJ noted that "progress notes" would be particularly helpful in evaluating the doctor's assessment. (*Id.*) However, no additional medical evidence was submitted.

**D.     The ALJ's Decision**

In making her decision, the ALJ took into account the testimony that was presented at the hearing and the medical evidence in the record. (Tr. 18–24.) The ALJ applied the five-step method for evaluating disability claims.[10]

The ALJ first found (at step one) that Plaintiff had not performed substantial gainful activity since the alleged onset date of disability. (Tr. 20.) In considering the severity of Plaintiff's impairments (step two), the ALJ determined that Plaintiff had the following "severe" medical impairment: degenerative disc disease and spondylolisthesis. (*Id.*) However, the ALJ also found that this medical impairment was not "severe enough" to meet or medically equal one of the listed impairments in the regulations (step three). (*Id.*)

Next, the ALJ assessed Plaintiff's residual functional capacity (RFC) to do work-related activities. (Tr. 20.) The ALJ determined that Plaintiff had the ability to perform a limited range of sedentary work. (*Id.*) Specifically, the ALJ determined that Plaintiff's ability to perform sedentary work was "compromised" by her ability to "stoop, kneel, and crouch no more than

---

[10] The five-step process for determining whether a plaintiff is eligible for benefits will be explained further in the Standard of Review section, *infra* Part II.A.

occasionally" and her need for "an occupation that would allow for a sit/stand option every 30 minutes."  (*Id.*)

In reaching this conclusion, the ALJ first analyzed Plaintiff's subjective symptoms in accordance with the regulations.  (Tr. 21.)  The ALJ then summarized the evidence in the record, noting "relevant negative findings upon physical examination" that included the appearance of comfort, active reflexes, well maintained sensation and strength, and lack of distress.  (Tr. 22.)  In addition, the ALJ noted the lack of "significant follow-up treatment" after Plaintiff's back surgery.  (*Id.*)  The ALJ pointed out that these negative findings were "contraindicative of a disabling back condition."  (*Id.*)  The ALJ considered the assessment of Dr. Dones-Vasquez, but she declined to give his opinion deference because it was "unsupported by the documentary medical evidence" and because there was "no evidence of a physician-patient relationship of any duration that would establish [Dr. Dones-Vasquez] as a treating physician."  (*Id.*)

Based on her RFC finding, the ALJ found (at step four) that Plaintiff was unable to perform her past relevant work as a home health provider, farm worker, packer, or janitor, because all those jobs required physical exertion capabilities above the sedentary level.  (*Id.*)  The ALJ next considered (at step five) whether there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, given her ability to perform a limited range of sedentary work.  (Tr. 23-24.)  Applying the Medical-Vocational Guidelines (Guidelines) as a "framework for decision-making," and relying on the VE's testimony at the evidentiary hearing, the ALJ found that Plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (Tr. 23.)  As such, the ALJ concluded that Plaintiff is "not disabled."  (Tr. 23-24.)

E.      **Procedural History**

Plaintiff sought administrative review of the ALJ's decision.  (Tr. 11.)  The Appeals Council concluded that there was no basis for challenging the decision, rendering it the Commissioner's final decision for purposes of judicial review.  (Tr. 2-4.)  The instant action followed in which Plaintiff seeks review of the decision pursuant to 42 U.S.C. § 405(g).  (Docket No. 1.)  The parties' motions for summary judgment are pending.  (Docket Nos. 7, 11.)  Those motions will be analyzed in light of the applicable standard of review.

## II.  ANALYSIS

A.      **Standard of Review**

To qualify for benefits under the Social Security Act (the "Act"), Plaintiff bears the burden of proving that she is disabled.  42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *see also Fraga v. Bowen*, 810 F.3d 1296, 1301 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983)).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled within the meaning of the Act, the Commissioner applies the following five-step inquiry:

(1)     whether the claimant is currently working in substantial gainful employment;

(2)     whether the claimant suffers from a severe impairment;

(3)     whether the claimant's severe impairment is sufficient under the pertinent regulations to support a finding of disability;

(4)     whether the claimant is capable of returning to his or her past relevant work; and, if not,

(5)     whether the impairment prevents the claimant from performing certain other types of employment.

*See* 20 C.F.R. §§ 404.1520, 416.920.

A finding that a claimant is disabled or not disabled at any point in the five-step inquiry is conclusive and terminates the analysis. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).  At steps one through four, the burden of proof rests upon the claimant to show that she is disabled. If the claimant satisfies this responsibility, the burden then shifts to the Commissioner at step five of the process to show that there is other gainful employment that the claimant is capable of performing despite her existing impairments.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

In this case, the ALJ found at step four that, while Plaintiff was able to perform a limited range of sedentary work, she was not capable of returning to her past relevant work.  At step five, the ALJ found, based on the vocational expert's testimony, that Plaintiff was not disabled because she could perform jobs existing in significant numbers in the national economy.  (Tr. 23-24.)

A federal court's review of the Commissioner's final decision is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Masterson*, 309 F.3d at 272.

Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*

Evidentiary conflicts are for the Commissioner to resolve, not the courts. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). In applying this deferential standard, however, the Court is not a "rubber stamp" for the Commissioner's decision, particularly given the importance of the benefits in question. *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 500 (S.D. Tex. 2003).

## B.    Issues

In seeking review of the Commissioner's denial of benefits, Plaintiff's principal contention is that the ALJ's RFC determination is unsupported by substantial evidence. (Docket No. 7, at 1, 7.) Plaintiff addresses this argument as four sub-issues: 1) the ALJ erred by rejecting the medical opinion of Dr. Jose Dones-Vasquez; 2) the ALJ rejected the opinion of Dr. Jimmy Breazeale, a state agency medical consultant; 3) having rejected the opinions of Drs. Dones-Vasquez and Breazeale, the ALJ's residual functional capacity finding is unsupported by any substantial medical opinion evidence; and 4) the ALJ's unsupported RFC finding is not mere harmless error. (Docket No. 7, at 1.) The Commissioner contends that "substantial evidence supports the ALJ's residual functional capacity assessment" and that "the ALJ properly considered the evidence of record," including the assessments of Drs. Dones-Vasquez and Breazeale. (Docket No. 12, at 5, 12.)

The issues raised by the parties will be addressed in the context of the standard of review that applies in social security cases (as discussed above).

**C.      Evaluation of Dr. Dones-Vasquez's Opinion**

1.      <u>Treating Physician Status</u>

In arguing that the ALJ's RFC finding is not supported by substantial evidence, Plaintiff contends that the ALJ erred in "reject[ing] the medical source statement opinion of attending orthopedic surgeon Jose Dones-Vasquez, M.D., that [Plaintiff] can sit for a total of less than two hours during an eight-hour day."  (Docket No. 7, at 7.)    Plaintiff suggests that the ALJ should have given more deference to Dr. Dones-Vasquez's assessment because he was a treating physician.  The Commissioner contends that the ALJ did not err because she "properly found that Dr. Dones-Vasquez did not provide [Plaintiff] any medical treatment other than surgery to establish a long-term treating physician relationship."  (Docket No. 12, at 5.)

Under the regulations, a treating physician is defined as a physician "who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an *ongoing* treatment relationship with you." 20 C.F.R. §§ 404.1502, 416.902 (emphasis added).  Generally, an "ongoing treatment relationship" exists "when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required."  *Id.*  "[T]he longer a treating source has treated [the claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the SSA] will give to the source's medical opinion."    20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).  The opinions of treating doctors are generally to be accorded "great weight." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

Here, the ALJ did not accord Dr. Dones-Vasquez's opinion special deference based on his status as a treating doctor.  As the ALJ explained, "there is no evidence that this physician provided the claimant with any medical treatment of any kind other than performing the surgery.  There is no evidence of a physician-patient relationship of any duration that would establish this physician as a treating physician."  (Tr. 22.)

In attempting to contradict the ALJ on this point, Plaintiff notes that in December 2007 (about a month before her surgery), Dr. Dones-Vasquez had ordered x-rays and an MRI, suggesting that he had seen the Plaintiff and examined her before the surgery.  (Docket No. 7, at 8 (citing Tr. 212-13).)  Plaintiff also points to her own hearing testimony for the proposition that she saw Dr. Dones-Vasquez on April 22, 2008, which was three months after her surgery and two days before her hearing.  (Id. (citing Tr. 262).)

This evidence fails to establish that Dr. Dones-Vasquez had an "ongoing" treating relationship with Plaintiff.  Even assuming (as Plaintiff suggests) that Dr. Dones-Vasquez personally examined Plaintiff prior to her surgery,[11] the ALJ was correct in noting that "t[h]ere is no evidence of any significant follow-up treatment of any kind."  (Tr. 22.)  Although Plaintiff was given an appointment for a follow-up visit two weeks after her surgery, there is no indication that she returned to see Dr. Dones-Vasquez until almost three months later—on the eve of the hearing on her disability claim.  It is unclear whether the doctor examined Plaintiff on that occasion; the principal purpose for the visit appears to have been to request that Dr. Dones-Vasquez fill out the "Lumbar Spine Questionnaire," which he did.[12]  (Tr. 226-30.)  There is

---

[11]  There is no medical report in the record to confirm this.

[12]  In completing the form, Dr. Dones-Vasquez was asked to "identify any positive objective signs."  (Tr. 226.)  Among other things, the doctor noted that the "straight leg raising test" was positive on the right leg at 45 degrees.  (Id.)  Presumably, Dr. Dones-Vasquez actually performed this test and otherwise examined Plaintiff regarding other objective signs, but he does

nothing in the record to indicate that Plaintiff ever saw Dr. Dones-Vasquez again after he completed the "Lumbar Spine Questionnaire."

At the evidentiary hearing, the ALJ noted the absence of additional records from Dr. Dones-Vasquez and inquired whether any records would be submitted.  (Tr. 270.)  In particular, the ALJ emphasized the importance of "any kind of progress notes" regarding Plaintiff's treatment.  (*Id.*)  Significantly, the ALJ noted that she would be "inclined to give deference to the neurosurgeon's RFC *if [she] had some kind of supporting narrative on it*."  (*Id.* (emphasis added).)  Plaintiff's counsel assured the ALJ that the records would be submitted.  (*Id.*)  However, no additional records from Dr. Dones-Vasquez (or anyone else) were provided.

In sum, although Dr. Dones-Vasquez performed surgery on Plaintiff's spine, the ALJ was justified in concluding that the doctor's treatment of Plaintiff spanned only a few days over the course of about five months.  As such, the ALJ did not err in concluding that this did not constitute an "ongoing treatment relationship" as contemplated by the regulations.  20 C.F.R. §§ 404.1502, 416.902.

    2.    <u>Weight Given to Dr. Dones-Vasquez's Opinion</u>

Whether or not Dr. Dones-Vasquez had an ongoing treatment relationship with Plaintiff, the ALJ was required to consider his opinion about Plaintiff's work-related physical limitations. 20 C.F.R. § 404.1527(b); *see also Newton*, 209 F.3d at 455.[13]   A medical opinion may be

---

not say so, and it is also possible that he based his responses on prior examination results. Unfortunately, as noted above, there are no treatment records from Dr. Dones-Vasquez.

[13] Under the regulations, medical opinions are defined as follows:

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

accorded significant weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.   20 C.F.R. § 404.1527(c)(2).   Ultimately, "the ALJ has sole responsibility for determining a claimant's disability status," and "the ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)) (emphasis added).   Even the opinions of treating physicians "may be assigned little or no weight when good cause is shown." *Newton*, 209 F.3d at 455–56.   Good cause exists when a treating source's opinion is conclusory, unsupported by medically acceptable evidence, or is otherwise lacking substantial support. *Id*. at 456.

Here, Plaintiff claims that the "objective documentary evidence does support Dr. Dones-Vasquez's sitting assessment."   (Docket No. 7, at 9.)   But whether or not there was some evidence supporting Dr. Dones-Vasquez's RFC opinion is not the right question.   Rather, the issue is whether there is substantial evidence supporting the ALJ's refusal to give Dr. Dones-Vasquez's  opinion controlling weight.[14]  *Newton*, 209 F.3d at 455–56.

---

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

[14]   There is certainly evidence in the record supporting the doctor's opinion.   But it is the ALJ's role to weigh all the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (relative weight to be given to expert testimony and medical evidence "is within the ALJ's discretion").   One such piece of evidence is Dr. Six's December 2005 statement that, based on the August 2005 MRI, Plaintiff is "quite disabled" and that she would "probably qualify" for disability benefits. (Tr. 224.)   As the Fifth Circuit has explained, however, "[a]mong the opinions by treating physicians that have no special significance are determinations that an applicant is 'disabled' or 'unable to work'" because these determinations are considered legal conclusions reserved to the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)).   In her decision, the ALJ determined that "the probative value of [Dr. Six's] assessment is compromised by the absence of corresponding positive findings upon physical examination."   (Tr. 22.)   In addition, Dr. Six did not attempt to describe the specific nature or extent of Plaintiff's functional limitations.   Plaintiff does not appear to contest the ALJ's analysis of Dr. Six's statement.

As the ALJ noted, Dr. Dones-Vasquez opined, in essence, that Plaintiff was limited to "significantly less than the full range of sedentary work."[15]  (*See* Tr. 22.)  The ALJ found that this "assessment is unsupported by the documentary medical evidence."  (*Id.*)  In addition to the absence of evidence to establish an ongoing treating relationship, the ALJ found that medical records showing "negative findings upon physical examination" contradicted the conclusion that Plaintiff has a "disabling back condition."  (*Id.*)

This conclusion is supported by substantial evidence.   In her decision, the ALJ summarized the medical evidence in some detail.  (Tr. 21-22.)  The ALJ noted that Plaintiff was hospitalized for back pain on August 26, 2005 (which is the alleged disability onset date).  (Tr. 22.)  After receiving treatment (including pain medication and an epidural steroid injection), Plaintiff denied that she was in pain, and she was moving without difficulty.  (*Id.* (referring to Tr. 189).)  Before her discharge, Dr. Krishnan, an orthopedic specialist, performed a physical examination.  While noting positive straight leg testing on the right (at 75 degrees), Dr. Krishnan also found that she was "able to sit up comfortably," her "[m]uscle strength is good to excellent," her "[r]eflexes are equally vocal," and her "[s]ensation is well preserved."  (Tr. 187.)

---

[15]   Plaintiff notes that the ALJ mistakenly believed that Dr. Dones-Vasquez completed the assessment on April 22, 2007, rather than on April 22, 2008.  (Docket No. 7, at 8 n.3 (citing Tr. 22).)  Plaintiff appears to be correct, based on her testimony that she had seen Dr. Dones-Vasquez two days before the hearing, which was held April 24, 2008.  (Tr. 262.)  But the ALJ's mistake is understandable since the doctor wrote the date "4/22/07" above the signature line on the last page of the assessment form.  (Tr. 230.)  As Plaintiff explains (Docket No. 7, at 8 n.3), the doctor wrote that date in response to the last question on the form (number 12), which asked: "What is the earliest date that the description of symptoms *and limitations* in this questionnaire applies?"  (Tr. 230 (emphasis in original).)  In any event, it does not appear that the ALJ's mistaken belief about the date of the assessment had any bearing on her decision.  On the other hand, assuming that Plaintiff is correct, the doctor's response to question number 12 contradicts her claim that she became disabled on August 26, 2005, since Dr. Dones-Vasquez indicates that Plaintiff's limitations did not begin earlier than April 22, 2007.

As the ALJ also noted, Plaintiff was admitted to the hospital three months later, on November 30, 2005, again for back pain.  (Tr. 22.)  Dr. Krishnan again examined Plaintiff.  (Tr. 151.)  Dr. Krishnan noted that Plaintiff had been "noncompliant" with his recommendation that she receive further steroid injections.  (*Id.*)  Upon physical examination, Plaintiff "appear[ed] comfortable," although she complained of "subjective pain on the right lower extremity."  (*Id.*)  Her reflexes were "active," and her sensation strength was "well maintained."  (*Id.*)

About two years later, in January 2008, Dr. Dones-Vasquez performed back surgery.  (Tr. 215-16.)  According to the hospital discharge summary,[16] Plaintiff "recovered nicely and did not have any complications or problems."  (*Id.*)  The day after the surgery she was able to sit with "no acute distress," and she was able to ambulate and move all her extremities; in particular, she was "moving the right lower extremity better than before."  (Tr. 217.)  Plaintiff was instructed that she should not bend, twist, lift, or drive for two weeks after her surgery.  (*Id.*)  As the ALJ emphasized, after this apparently successful surgery, "[t]here is no evidence of any significant follow-up treatment of any kind."  (Tr. 22.)

The objective physical findings in Dr. Dones-Vasquez's responses to the "Lumbar Spine Questionnaire" are also noteworthy.  In response to the question asking him to "[i]dentify any positive objective signs," the doctor noted only the following: straight let raising test (right leg at 45 degrees); reflex changes ("ankle jerk"); and muscle spasm.  (Tr. 226.)  Dr. Dones-Vasquez found no objective signs of the following: abnormal gait; sensory loss; tenderness; muscle atrophy; muscle weakness; impaired appetite; or impaired sleep.  (*Id.*)

---

[16]   The discharge summary contains a signature line for Dr. Dones-Vasquez and "Veronica M Cox, PAC."  (Tr. 217.)  The report appears to have been prepared by a certified physician assistant working under the direction of Dr. Dones-Vasquez.

The physical examination findings from several doctors, together with the absence of any supporting treatment records from Dr. Dones-Vasquez, support the ALJ's refusal to accord his opinion controlling weight.  Even if Dr. Dones-Vasquez could be considered a physician with an ongoing treatment relationship with Plaintiff, the record reflects sufficient "good cause" for the ALJ to give his opinion "little or no weight."  *See Newton*, 209 F.3d at 455–56.

**D.     Evaluation of Dr. Breazeale's Opinion**

In arguing that the ALJ's determination is unsupported by substantial evidence, Plaintiff asserts that the ALJ rejected "the opinion of State Agency Medical Consultant Jimmy Breazeale, M.D., that [Plaintiff] can sit for about six hours without alternating sitting and standing." (Docket No. 7, at 10.)  Plaintiff's argument seems to suggest that the ALJ erred in rejecting Dr. Breazeale's opinion, given the ALJ's RFC determination.[17]  (*Id*. at 10-11.)

As Plaintiff correctly notes (*id*. at 11), an ALJ "must consider findings and other opinions of State agency medical" consultants "as opinion evidence"  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  Such state agency medical consultants "are highly qualified physicians . . . who are also experts in Social Security disability evaluation."  *Id.*  "Administrative law judges . . . are not bound by findings made by State agency or other program physicians . . . , but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180, at *2 (1996); 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). In particular, "[u]nless a treating source's opinion is given controlling weight, the administrative

---

[17]    At first blush, Plaintiff's argument seems curious.  She would not have wanted the ALJ to accept Dr. Breazeale's opinion since he found Plaintiff to be less limited (i.e., with the capacity to do a broader range of work-related activity) than is reflected by the ALJ's RFC determination.  Plaintiff nevertheless emphasizes the ALJ's alleged complete rejection of Dr. Breazeale's opinion in order to support her argument that there is no medical opinion evidence to support the ALJ's RFC determination.  That argument is addressed further above.

law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

Here, Dr. Breazeale reviewed Plaintiff's medical records and performed a residual functional capacity (RFC) assessment on November 21, 2005. (Tr. 156-63.) Dr. Breazeale determined that Plaintiff had the ability to do the following: lift and/or carry 25 pounds frequently and 50 pounds occasionally; sit for 6 hours out of an 8-hour workday; stand or walk for 6 hours out of an 8-hour workday; climb, stoop, and crouch occasionally; and push or pull without limitation. (Tr. 157.) Dr. Breazeale's assessment includes a detailed description of the medical evidence that supported his opinion, including (among other things) MRI results, records from Plaintiff's August 2005 hospitalization, and the results of Dr. Krishnan's physical examination. (Tr. 157-58.) Dr. Breazeale concluded that Plaintiff's alleged subjective limitations were not supported by objective medical evidence, and he summarized the medical evidence that supported this opinion. (Tr. 161.) The doctor emphasized that after receiving a lumbar steroid injection, Plaintiff reported that she had no pain, and she was moving "without any difficulty." (*Id.*)

The ALJ stated in his decision that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 21.) Consistent with this, the ALJ discussed Dr. Dones-Vasquez's opinion and explained why it was not entitled to controlling weight. (Tr. 22.) However, contrary to the regulations, the ALJ failed to discuss Dr. Breazeale's assessment or to "explain in the decision the weight given" to his opinion. 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

The issue is whether this error was harmless. *See Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005) (holding that an ALJ's failure to articulate the weight given to two state

agency medical consultants was harmless error).  As the Fifth Circuit has observed, an "ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it."  *Id*.  As in the *Hammond* case, here "the ALJ's decision states explicitly that he considered the entire record in his decision."  *Id*.

In essence, Dr. Breazeale opined that Plaintiff was capable of work at a medium exertional level despite her impairments.[18]  Ultimately, the ALJ found that Plaintiff retained the "residual functional capacity to perform sedentary work."[19]  (Tr. 20.)  As Plaintiff points out, contrary to Dr. Breazeale's assessment, the ALJ also found that Plaintiff would need a job that allowed for a sit/stand option.  (Docket No. 7, at 10.)  Although the ALJ's RFC finding is more restrictive than Dr. Breazeale's assessment, the opinion of the consulting doctor supports the proposition that Plaintiff was capable of some types of work activity.  Because Dr. Breazeale's assessment supports the ALJ's decision, the ALJ's error in failing to explain the weight she gave to Dr. Breazeale's opinion was harmless.[20]

**E.    Medical Opinion Evidence**

Plaintiff argues that because the ALJ "rejected" the opinions of both Dr. Dones-Vasquez and Dr. Breazeale, her RFC determination was left "unsupported by any substantial medical

---

[18] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary or light work."  20 C.F.R. §§ 404.1567(c), 416.967(a).

[19] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

[20] Of course, the ALJ should have followed the Commissioner's regulations in rendering her decision.  While the failure to do so was harmless error here, it made judicial review more difficult and, in other contexts, may well result in remands that would otherwise be unnecessary.

opinion evidence." (Docket No. 7, at 12.) Plaintiff contends that, absent such evidence, the ALJ impermissibly substituted her own lay opinion in determining Plaintiff's RFC. (*Id*.) Plaintiff's argument focuses on the ALJ's finding that she "can sit for a total of six hours during the workday if afforded a sit-stand option." (*Id*. at 15.)

Plaintiff is correct that ALJs must avoid "playing doctor and making their own independent medical assessments." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). "Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). As Plaintiff points out, in *Ripley* the Fifth Circuit found that a remand for additional administrative proceedings was necessary where the "record includes a vast amount of medical evidence establishing that [the claimant] has a problem with his back. What the record does not clearly establish is the effect claimant's condition had on his ability to work." *Id*.

However, the Fifth Circuit also emphasized that the absence of a medical source statement "does not, in itself, make the record incomplete." *Id*. Rather, "where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id*. "[M]edical opinions are not conclusive because it is the ALJ's role to decide the claimant's status." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *5 (5th Cir. Aug. 19, 2005) (citing *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001)).

Plaintiff argues that this case is "controlled" by the Fifth Circuit's ruling in *Williams v. Astrue*, 355 F. App'x 828 (5th Cir. 2009). This Court agrees that the *Williams* decision is instructive. In *Williams*, the ALJ had "declined to give controlling weight to the opinion of [the

claimant's] three treating physicians . . .—each of whom offered opinions supporting [the claimant's] claimed limitations." *Id.* at 829.   All three doctors opined that the claimant was capable of no more than sedentary work due to back pain and other problems, but the ALJ nevertheless found that the claimant could perform the full range of light work.[21]   *Id.* at 831. While "[a]ssuming that the ALJ was entitled to not give these physicians' opinions controlling weight," the Fifth Circuit found that "there is still *no evidence* supporting the ALJ's finding that [the claimant] can stand or walk for six hours in an eight-hour workday." *Id.* (emphasis added). As such, "the ALJ impermissibly relied on his own medical opinions . . . to develop his factual finding." *Id.* at 832.

Unlike *Williams*, however, here there is other medical opinion evidence that supports the ALJ's finding that Plaintiff is capable of sitting for six hours during a work day if provided a stand/sit option every thirty minutes.   Specifically, Dr. Breazeale's assessment supports the ALJ's conclusion that Plaintiff is not as severely limited as suggested by Dr. Dones-Vasquez, who found that Plaintiff could sit for less than two hours in a work day and that she would need to get up and move around every 15 minutes.[22]   (Tr. 228.)   Contrary to that assessment, Dr. Breazeale found that Plaintiff could perform work that required sitting for six hours in an eight-hour work day with normal breaks.[23]   (Tr. 157.)   While the ALJ ultimately concluded that

---

[21]   As can be seen, the evidence offered by the claimant in *Williams* was far more substantial than the evidence relied upon by Plaintiff in this case.   The *Williams* claimant submitted opinions from three different treating doctors, all of whom supported her alleged limitations.

[22]   Dr. Dones-Vasquez's assessment is not entirely consistent.   He found that Plaintiff can sit for a total of "less than 2 hours" in an eight-hour work day and that she would need to move around every 15 minutes.   (Tr. 28.)   But he also found that she "can *continuously* sit . . . *at one time*" for 2 hours, 20 minutes.   (Tr. 28; emphasis in original.)

[23]   As noted above, Dr. Breazeale's assessment includes detailed notes about the medical records and findings that he relied upon.   (*See* Tr. 157-58, 161.)   Those medical records reflected treatment that Plaintiff received through the time of her alleged disability onset date.   While

Plaintiff was more limited, Dr. Breazeale's expert opinion certainly supports the ALJ's finding that Plaintiff could sit for six hours during a work day if given a sit/stand option every thirty minutes (since he believed that Plaintiff could sit for six hours in a work day without the need for special breaks).[24]   *See Gutierrez*, 2005 WL 1994289, at *6 n.3 (finding that, although "the ALJ

---

Plaintiff received medical treatment after Dr. Breazeale completed his assessment, including back surgery over two years later, there is nothing in the record to suggest that there had been any significant change in Plaintiff's condition.   Doctors had recommended surgery based on Plaintiff's August 2005 MRI (*see* Tr. 151, 187-88, 224), which Dr. Breazeale considered in making his assessment (Tr. 157).   As noted, Plaintiff initially refused "any invasive surgical procedures" in August 2005.   (Tr. 188.)   After changing her mind by November 30, 2005 (Tr. 149, 151), she thereafter delayed the surgery for over two years for financial reasons.   (Tr. 261.) The relevant findings from the December 2007 MRI results (taken just prior to Plaintiff's surgery) are the same as the August 2005 MRI results.   (*Compare* Tr. 213 (December 2007 MRI) *with* Tr. 170 (August 2005 MRI), Tr. 185 (Dr. Narro noting that the August 2005 MRI showed "severe" degenerate changes at L5-S1 "with spondylolisthesis or anterolisthesis"), Tr. 151 (Dr. Krishnan noting that the August 2005 MRI showed "anterolisthesis and forminal stenosis at L5-S1")).   As the Third Circuit has noted, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Chandler v. Comm'n*, 667 F.3d 356, 361 (3d Cir. 2011).   But an updated assessment is required "[o]nly where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding.'"   *Id.* (citing SSR 96-6p (July 2, 1996) (emphasis in original)).   Here, the ALJ did not find that an updated assessment was needed.

    [24]   Plaintiff attempts to avoid this conclusion by arguing that the ALJ "rejected" Dr. Breazeale's opinion.   (Docket No. 7, at 10-12.)   This argument is not persuasive.   To begin with, contrary to Plaintiff's assumption, the ALJ did not find that Dr. Breazeale's medical opinion was entitled to no weight.   Beyond that, the logic behind Plaintiff's position is faulty.   As Plaintiff appears to recognize, had the ALJ adopted Dr. Breazeale's assessment in its entirety, the ALJ could not have been faulted for impermissibly relying on his own lay opinion.   It follows that Dr. Breazeale's opinion supports the ALJ's finding that Plaintiff was less limited than determined by Dr. Dones-Vasquez and that the ALJ did not err in concluding that Plaintiff's RFC falls between the assessments by the two medical experts who provided an opinion.   Ultimately, the ALJ's RFC determination was closer to Dr. Dones-Vasquesz's assessment, finding that Plaintiff is now limited to sedentary work and then only if she is provided with a sit/stand option.   This finding is consistent with the ALJ's role, which is to weigh all the evidence, including the medical opinion evidence.   *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (relative weight to be given to expert testimony and medical evidence "is within the ALJ's discretion"); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)).   The fact that the ALJ did not rubber-stamp the state agency doctor's assessment tends to support—not undermine—the ALJ's decision.

did not even refer to the state agency reviewing physician's report," the "ALJ's conclusions . . . seem to take into account some of the findings of this report, at least implicitly"). "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton*, 209 F.3d at 452).

Of course, the critical inquiry is "whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557. Apart from the medical opinion evidence, other medical evidence in the record supports the ALJ's decision. As described in the ALJ's decision (*see* Tr. 22), Plaintiff received rather limited medical treatment over a period of about three years (beginning with the alleged disability onset date in August 2005), and the treatment that she did receive appeared to be helpful in addressing her symptoms. The medical records reflect that Plaintiff was hospitalized and treated for back pain in August and November 2005. On both occasions, Plaintiff was comfortable and able to move well after she received pain treatment. Physical examinations showed that Plaintiff had good strength and reflexes.

Over the next two years, Plaintiff sought medical assistance only twice (in July 2006 and March 2007), and she received limited medical treatment (including instructions to take Motrin). In January 2008, Plaintiff had back surgery. The surgery appeared to be successful and afterwards Plaintiff was moving well. As the ALJ emphasized, "[t]here is no evidence of any significant follow-up treatment of any kind." (Tr. 22.) Such evidence in the medical records supports the ALJ's finding that Plaintiff was not so limited that she was completely unable to perform work of any kind.

In addition to the medical evidence, the ALJ considered Plaintiff's subjective symptoms. Although the ALJ agreed that Plaintiff's impairments "could reasonably be expected to produce

the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects" of her impairments "are not [entirely] credible." (Tr. 21.) An ALJ's determination whether subjective complaints, such as pain, are disabling is "entitled to considerable deference." *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991); *see also Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (noting that "[s]ubjective complaints of pain must also be corroborated by objective medical evidence").

Here again, the medical evidence, including "absence of positive findings" during physical examinations, tends to support the ALJ's finding. (Tr. 22.) The record reflects that Plaintiff infrequently sought medical treatment over a period of several years and that, when she did, the treatment—including pain medication and later surgery—appeared to relieve her symptoms. Based on the absence of any significant follow-up treatment after her surgery, the ALJ found "that it is reasonable to assume that the aforementioned surgery reduced the claimant's back pain and other symptoms to manageable and acceptable levels." (Tr. 22.) Lack of treatment is a proper factor for the ALJ to consider when evaluating subjective complaints of pain.[25] *See* 20 C.F.R. § 404.1529(c)(3)(v); *see also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("[T]he ALJ was not precluded from relying upon the lack of treatment as an indication of nondisability.").

---

[25] While not stated in the ALJ's decision (and thus not a sufficient basis to affirm her finding), the record reflects other evidence that further supports the ALJ finding that Plaintiff's subjective complaints were not entirely credible. For example, Plaintiff testified that Dr. Dones-Vasquez completed his assessment two days before her hearing. (Tr. 262.) In doing so, Dr. Dones-Vasquez noted that Plaintiff did not need to "use a cane or other assistive device" to walk or stand. (Tr. 229.) During her hearing testimony, Plaintiff stated that she does need to use a cane but "forgot it" for the hearing. (Tr. 261.) Dr. Dones-Vasquez also indicated that Plaintiff could "frequently" lift up to ten pounds and "occasionally" could lift ten to twenty pounds, which is consistent with his finding that she had no muscle weakness or atrophy. (Tr. 226, 229.) His strength assessment is also consistent with Dr. Krishnan's earlier examination finding that Plaintiff's "[m]uscle strength is good to excellent." (Tr. 187.) At the hearing, however, Plaintiff stated that she could not lift a gallon of milk (which weighs less than ten pounds). (Tr. 264.)

In sum, the ALJ's step four RFC finding is supported by "more than a mere scintilla" of evidence in the record, including medical opinion evidence.[26]  *See Boyd*, 239 F.3d at 704; *see also Gutierrez*, 2005 WL 1994289, at *7 (holding that the ALJ's RFC determination was based on substantial evidence "even without . . . a medical opinion").  Because the ALJ's decision is supported by substantial evidence, Plaintiff's argument fails.[27]

---

[26]  In *Hammond*, the claimant argued that the ALJ had failed to consider opinions by state agency doctors, which (according to the claimant) supported a finding of disability.  *Hammond*, 124 F. App'x at 850-51.  In rejecting this argument, the Fifth Circuit held that while "there is some evidence that points to a conclusion that differs from that adopted by the ALJ," the ALJ's decision would not be reversed "because there is far more than a scintilla of evidence in the record that could justify his finding that [claimant's] impairments were not severe disabilities within the meaning of the Act."  *Id.* at 853.  As in *Hammond*, there is more than a scintilla of evidence to support the ALJ's decision here.

[27]  Plaintiff's reply brief states that "the real issue in this case is whether the Commissioner met his burden of proof at step 5."  (Docket No. 19, at 2.)  Plaintiff's burden of proof argument is misplaced.  As the Supreme Court has recognized, the Social Security Act confers broad authority on the Commissioner to "'adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same' in disability cases."  *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) (quoting 28 U.S.C. § 405(a)).  It is true that the disability analysis proceeded to step five in this case, and, as a result, the burden of proof shifted to the Commissioner to provide "evidence that demonstrates that other work exists in significant numbers in the national economy that [Plaintiff] can do, given [her] residual functional capacity and vocational factors."  20 C.F.R. § 404.1560(c)(2); *see also Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) ("at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments") (quoting *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999)).  Here, however, Plaintiff does not contest the sufficiency of the evidence from the vocational expert that significant numbers of jobs exist in the national economy that Plaintiff can perform, given the ALJ's RFC finding; rather, Plaintiff challenges the ALJ's step four RFC finding.  (Docket No. 7, at 1, 7; Docket No. 19, at 2.)  As the regulations now make clear, at step five the Commissioner is "not responsible for providing additional evidence about [Plaintiff's] residual functional capacity because [he] will use the same residual functional capacity assessment that [was] used to determine if [she] can do [her] past relevant work" at step four.  20 C.F.R. § 404.1560(c)(2); *see also Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (holding that regulations promulgated on August 26, 2003, "clarify that there is only a limited burden shift to the Commissioner at step five").  Contrary to Plaintiff's argument, she retained the step-four burden of proof regarding the extent of her limitations in performing work-related activities.

**F.      Harmless Error Analysis**

As Plaintiff recognizes, even if the ALJ had erred in failing to obtain additional medical

opinion evidence clarifying how her back impairment affects her ability to perform work-related

functions, Plaintiff must show that she was prejudiced by any such error.[28]   To establish

prejudice, Plaintiff asserts the following:

> [I]f Ms. Garza had been found limited to sitting for less than two hours during the
> workday, as Dr. Dones-Vasquez opined, Ms. Garza would have been found
> "disabled" based on the VE's testimony.

(Docket No. 7, at 16.)   While this is a true statement, it does not show that Plaintiff was

prejudiced.

As the Fifth Circuit has observed: "Procedural perfection in administrative proceedings is

not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *see also Frank v. Barnhart*,

326 F.3d 618, 622 (5th Cir. 2003) (applying harmless error analysis in the disability benefits

context).   "Reversal . . . is appropriate only if the applicant shows prejudice from the ALJ's

failure to request additional information." *Newton*, 209 F.3d at 458 (citing *Ripley*, 67 F.3d at

557).   "To establish prejudice, a claimant must show that he could and would have adduced

evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)

(internal quotations and citation omitted).

Here, Plaintiff cannot establish prejudice by relying on Dr. Dones-Vasquez's assessment.

The ALJ articulated sufficient reasons for her refusal to give the doctor's opinion controlling

---

[28]   Although Plaintiff does not frame the issue as a failure to fully develop the record, that
is the nature of the ALJ's error (if any).   For the reasons explained above, the ALJ acted within
her discretion in refusing to give controlling weight to Dr. Done-Vasquez's opinion. *See supra*
Part II.C.2.   If, as Plaintiff argues, Dr. Breazeale's opinion and the other remaining evidence in
the record failed to provide sufficient evidence from which the ALJ could have determined
Plaintiff's RFC, then the ALJ should have taken appropriate steps to further develop the record
(for example, by re-contacting Dr. Dones-Vasquez or requesting a consultive examination). *See*
*Ripley*, 67 F.3d at 557; *see also Newton*, 209 F.3d at 457.

weight.  *See supra* Part II.C.2.  Plaintiff has failed to suggest what other evidence would have been uncovered that might have altered the result.  Nor is there any basis on this record to conclude that additional medical evidence would have supported Plaintiff's claim that she is unable to perform work of any kind.  This conclusion is particularly apt, given that at the end of the evidentiary hearing the ALJ invited Plaintiff's counsel to supplement the record with additional medical evidence from Dr. Dones-Vasquez and emphasized the importance of such evidence.  (Tr. 270 ("I'm inclined to give deference to the neurosurgeon's RFC if I have some kind of supporting narrative on it.").)  Plaintiff neither provided any further evidence then, nor does she now suggest any other evidence, that would have been adduced and that might have changed the result.  *See Brock*, 84 F.3d at 728.

Plaintiff's failure to show that she was prejudiced by the ALJ's alleged error in failing to obtain additional medical opinion evidence is another reason that her challenge to the Commissioner's decision must fail.

### III.  CONCLUSION

Based on the foregoing, Plaintiff's claim that the ALJ committed reversible error lacks merit.  Plaintiff's motion for summary judgment (Docket No. 7) is **DENIED**, and the Commissioner's motion for summary judgment (Docket No. 11) is **GRANTED**.  A judgment consistent with this memorandum opinion will be entered.

The Clerk shall provide a copy of this memorandum opinion to counsel for the parties.

DONE at McAllen, Texas on June 3, 2013.

Peter E. Ormsby
United States Magistrate Judge